**UNITED STATES DISTRICT COURT**
**THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSHUA WONG, for himself and all others similarly situated<br><br>Plaintiff,<br><br>-against-<br><br>ALTERNTIVE CLAIMS MANAGEMENT, LLC, and SIXT RENT A CAR LLC,<br><br>Defendants. | Civil Case Number: _____<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff alleges:

## NATURE OF THE ACTION

1. Alternative Claims Management, LLC ("ACM") engaged in unlawful debt collection practices in violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA").

2. Plaintiff brings pendant state law claims against ACM and Sixt Rent A Car LLC, under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fl. Stat. § 501.201 *et seq.*

## JURISDICTION AND VENUE

3. Jurisdiction of FDCPA claims is under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Jurisdiction of pendant state law claims is under 28 U.S.C. § 1367.

4. The Court has personal jurisdiction over all defendants. ACM and Sixt sought to collect a debt in this judicial district giving rise to this action.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). Plaintiff is a

resident of this judicial district, and communications giving rise to this action were sent to Plaintiff in this district.

## PARTIES

6. Plaintiff is a natural person and a resident of New York, New York. Plaintiff is a "Consumer" as defined by 15 U.S.C. §1692(a)(3).

7. Defendant ACM is organized under the laws of Texas, and maintains its principal place of business at 16404 San Pedro Avenue, San Antonio, Texas, 78232.

8. Defendant ACM is a "debt collector," as defined under the FDCPA under 15 U.S.C. § 1692a(6).

9. ACM uses the mail, email and telephone to regularly engage in business the principal purpose of which is to attempt to collect debts alleged to be due another.

10. Sixt is a car rental company which offers consumer car rentals throughout the United Sates. Together with its affiliates, Sixt offers consumer car rentals in roughly 100 countries globally.

11. Sixt is organized under the laws of Delaware, and maintains its principal place of business at 1850 S.E. 17th Street, Unit 207, Fort Lauderdale, Florida, 33316.

## FACTS AS TO NAMED PLAINTIFF

12. Plaintiff rented a car from Sixt at Los Angeles International Airport between June 25 and July 2, 2016.

13. The rental was subject to a standard form car rental agreement with a Florida choice-of-law provision.

14. Plaintiff returned the car on July 2, 2016 at 12:07 p.m.

15. Plaintiff was not charged for any damage to the car upon returning it. Plaintiff and a Sixt

attendant walked around the vehicle at the time of return, and noted no new damage to the vehicle.

16. Later that day, Plaintiff received an automated email from Sixt, stating in relevant part:

> We would like to confirm the return of your rental vehicle today, as detailed in the attached receipt. We have also attached an estimated cost overview to this e-mail as a PDF file. Your total due will be settled within 48 hours against your payment method on file.

17. The "total due" as reflected in the attached receipt, and as settled on Plaintiff's credit card account, was $497.56.

18. Nearly three weeks later, on July 21, 2016, Sixt emailed Plaintiff requesting, for the first time, information on damage to the rental car. Sixt's July 21 email stated in part:

> Dear Sir or Madam,
>
> After your drop off it has been noted/ you have informed us that the vehicle you rented had sustained a new damage. …

19. The following day, Sixt email Plaintiff a "Return Checksheet," purporting to show damage to the rental vehicle while it was in Plaintiff's possession. The Checksheet is attached to this Complaint as **Exhibit A**.

20. The Checksheet is blatantly false.

21. The Checksheet purports to indicate that, in a single week, the vehicle sustained scratches and dents to all four wheels, the hood, the trunk, the front bumper and two doors – none of which had been noted by Sixt at the time Plaintiff returned the vehicle.

22. Sixt obviously sought to hold Plaintiff responsible for routine scratches and dents the car had sustained over an extended period, and not during his rental.

23. The Return Checksheet is deceptively dated July 2, 2016, 12:07 p.m. In fact, Sixt did not write up the Return Checksheet on that date or at that time. The deceptive date is

3

material. Sixt dated the document so that it appeared to have been prepared at the time Plaintiff returned the vehicle, when he was physically present at Sixt. To anyone reviewing the document subsequently, this would suggest Plaintiff was present, and implicitly agreed, at the time Sixt prepared the Return Checksheet.

24. In fact, Sixt prepared the document long after Plaintiff had left, and when he was not present to dispute any of Sixt's allegations.

25. Over a period of months, in July 2016 and again in October 2016, Sixt initiated communications with Plaintiff regarding the purported damage to the rental vehicle. Upon information and belief, Sixt sought to collect money from Plaintiff, or in the alternative, sought to collect sufficient information from Plaintiff to submit a claim to insurance.

26. Plaintiff refused to cooperate with Sixt, on grounds he was not responsible for any damage to the vehicle.

27. Plaintiff received a letter from Defendant ACM dated March 28, 2017 seeking payment for damage to the rental vehicle, or in the alternative, information to submit a claim to insurance. ACM's letter is attached hereto as **Exhibit B**.

28. ACM's March 28 letter to Plaintiff was its initial communication to him.

29. ACM prominently presented itself as a debt collector to Plaintiff.

30. ACM sought to hold Plaintiff responsible not only for the damage Sixt had alleged – itself a sham – but incredibly, ACM sought to hold Plaintiff responsible for the damage Sixt itself had conceded was pre-existing. For example, Sixt's Return Checksheet explicitly noted that rear bumper damage was pre-existing, and did not make any note of rear bumper damage while the car was in Plaintiff's possession. Yet, in ACM's

4

collection letter to Plaintiff, it calculated hundreds of dollars into Plaintiff's bill for labor to repair the rear bumper.

31. ACM further sought to hold Plaintiff responsible for a $150 administrative fee, to which it was not entitled.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and, as to each Class Action, all similarly situated consumers in the United States and their successors in interest (collectively, the "Classes").

33. Upon information and belief, during the relevant time period, Sixt rented cars to consumers pursuant to a standard form agreement, identical in all material respects with respect to each class member.

34. The time period for each class is:

- One year prior to the filing of this action, for all claims brought under the FDCPA; and

- Four years prior to the filing of this action, for all claims brought under the Florida Deceptive and Unfair Trade Practices Act.

35. The Classes satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure for maintaining a class action:

   a) Upon information and belief, each of the Classes is so numerous that joinder of all members is impracticable because there are scores or hundreds of persons who have received unlawful debt collection letters and/or notices from ACM.

b) There are questions of law and fact which are common to all class members within each of the Classes and which predominate over questions affecting any individual Class member.

c) Plaintiff's claims under each Class cause of action are typical of the respective Class.  As to each Class Action, Plaintiff's claims and those of Class members arise from the same operative facts and are based on the same legal theories.

d) Plaintiff has no interest adverse or antagonistic to the interest of the other members of any Class.

e) Plaintiff will fairly and adequately protect the interest of each of the Classes and has retained competent counsel to represent the Class.

f) Each of the Class Actions is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of the Class Actions.

g) Each of the Class Actions will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

h) Defendants have acted on grounds generally applicable to the each of the entire Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each of the Classes as a whole.

## COUNT I
## AGAINST ACM

36. All preceding paragraphs are re-alleged.

37. Plaintiff brings Count I against ACM for himself and the following Class (the, "Count I Class"):

> All consumers residing in the United States from whom, in the year prior to filing this action and ongoing through the present, ACM sought to collect a debt on behalf of Sixt for rental car vehicle damage, where ACM sought to collect $150 in "Administrative Fees."

38. Section 1692f(1) of the FDCPA prohibits a debt collector from attempting to collect, "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

39. Consumers rent cars from Sixt pursuant to the terms of a standard form agreement.

40. The standard form agreement does not explicitly provide that the consumer will be charged $150 in "administrative fees" in connection with the collection of amounts due for vehicle damage.

41. ACM's letter to Plaintiff, and to class members, sought to collect administrative fees to which it was not entitled, and to which Sixt was not entitled.

42. Upon information and belief, ACM's letter to Plaintiff is a standard form letter, sent to forty or more consumers.

43. Each such letter violates the FDCPA for the reasons set forth more fully above.

## COUNT II
## AGAINST ACM AND SIXT

44. All preceding paragraphs are re-alleged.

45. Plaintiff brings Count II against ACM and Sixt for himself and the following Class (the, "Count II Class"):

> All consumers residing in the United States from whom ACM sought to collect a debt on behalf of Sixt for rental car vehicle damage, where such damage was pre-existing at the time such consumer rented the subject vehicle from Sixt.

46. ACM sought, in its March 28 letter to Plaintiff, to collect amounts for damage to a Sixt rental vehicle which were pre-existing at the time Plaintiff rented such vehicle.

47. Sixt retained ACM to pursue Plaintiff for such payments.

48. ACM's attempt to collect such amounts constitutes numerous violations of the FDCPA, including nder 15 U.S.C. §§ 1692e(2); 1692e(10); 1692f(1); and 1692f(a)(1).

49. ACM's attempt to collect such amounts constitutes a violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fl. Stat. § 501.204.

50. Sixt's retaining ACM to pursue collection of such payments similarly constitutes a violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fl. Stat. § 501.204.

51. The class is ascertainable. Sixt maintains records documenting pre-existing damage at the time a vehicle is rented. ACM maintains records of the damage for which it seeks collection from consumers.

52. Upon information and belief, Sixt and ACM lacked processes and procedures to assure the debts they sought to collect from consumers generally were legitimately owed.

53. ACM's and Sixt's unlawful debt collection efforts against Plaintiff reflect a lack of

processes and procedures at ACM, causing defective and unlawful debt collection practices against consumers generally.

54. ACM's and Sixt's collection efforts against each class member are unlawful for the reasons alleged more fully above.

## COUNT III
## AGAINST ACM AND SIXT

55. All preceding paragraphs are re-alleged.

56. Plaintiff brings Count III against ACM for himself and the following Class (the, "Count III Class"):

> All consumers residing in the United States from whom ACM sought to collect a debt on behalf of Sixt for rental car vehicle damage, where such damage was first recorded by Sixt following the return of the vehicle and not in the presence of the consumer from whom ACM sought to collect such payment.

57. ACM sought, in its March 28 letter to Plaintiff, to collect amounts for damage to a Sixt rental vehicle which were not recorded by Sixt until weeks after Plaintiff returned the subject vehicle.

58. Sixt retained ACM for such purposes.

59. It is unconscionable to hold a consumer responsible for damage to a rental vehicle, while depriving that consumer of the opportunity see the damage for himself or herself at the time of return.

60. ACM's attempt to collect from Plaintiff for damage first recorded by Sixt after the return of the vehicle, and after Plaintiff was not present, is an unconscionable means of collecting a debt, in violation of section 1692f of the FDCPA, and an unfair business practice in violation of FDUTPA § 501.204.

61. Sixt's retaining ACM for the collection of such amounts is similarly an unfair business

practice, in violation of FDUTPA § 501.204.

62. The damage for which ACM and Sixt sought to collect from Plaintiff could have been pre-existing, may not have existed at all, or could have occurred after Plaintiff returned the vehicle and it was sitting in Sixt's lot. ACM itself emphasizes to consumers that vehicles may be damaged while parked in a lot. For example, ACM president Randy Harris stated in a 2010 interview:

> a vehicle may get bumped in a parking lot on the passenger side.
> The renter never sees it or knows it happened. When the vehicle is
> returned and the damage is discovered they are responsible for it.

63. By the same logic, Plaintiff's vehicle may have been damaged after it was returned to Sixt, and it was sitting in Sixt's lot.

64. ACM's and Sixt's debt collection effort violated Sixt's own representation to Plaintiff, that final settlement of all amounts owed would be processed within 48 hours of confirmation of vehicle return.

65. The class is ascertainable. Sixt's July 21 email to Plaintiff stated (emphasis added), "[a]fter your drop off it has been noted" that there was damage to the vehicle. Records of such communications may establish those accounts where damages were first recorded after the time of vehicle drop-off.

66. ACM's unlawful debt collection efforts against Plaintiff reflect a lack of processes and procedures at ACM, causing defective and unlawful debt collection practices against consumers generally.

67. Upon information and belief, ACM lacked processes and procedures to assure the debts it sought to collect from consumers generally were legitimately owed.

68. ACM's collection efforts against each class member are unlawful for the reasons alleged

10

more fully above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

a) Certifying the classes alleged herein, and appointing named Plaintiff and undersigned counsel to represent the same;

b) Against ACM, awarding Plaintiff and each of the Classes statutory damages;

c) Against ACM and Sixt, awarding Plaintiff and each of the Classes actual damages;

d) Against ACM and Sixt, awarding costs of this Action, and reasonable attorneys' fees and expenses;

e) A declaration that defendants' conduct alleged herein is unlawful, and equitable and injunctive relief sufficient to remedy the same;

f) Interest as allowed by law and all such further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury.

Dated:  New York, New York
April 27, 2017

                                                          **POSNER LAW PLLC**

                                                          *s/ Gabriel Posner, Esq.*
                                                          270 Madison Ave.
                                                          Suite 1203
                                                          New York, New York 10016
                                                          Phone: 646-546-5022
                                                          Email: gabe@PosnerLawPLLC.com
                                                          *Counsel for Plaintiff*