UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSHUA WONG, for himself and all others similarly situated,

                Plaintiff,

-against-

ALTERNATIVE CLAIMS MANAGEMENT, LLC,

                Defendant.

**OPINION AND ORDER**

17 Civ. 3133 (ER)

Ramos, D.J.:

    Joshua Wong ("Plaintiff" or "Wong") brings a class action against Alternative Claims Management LLC ("ACM" or "Defendant") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Before this Court is Defendant's motion to dismiss the First Amended Complaint ("FAC") in its entirety pursuant to the Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

    For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Factual Background[1]

    On June 25, 2016, Wong rented a 2016 Cadillac XTS (the "Vehicle") at Los Angeles International Airport from Sixt Rent A Car, LLC ("Sixt"). FAC ¶ 8 & Ex. A. This rental was subject to a standard form car rental agreement. *Id.* ¶ 9. On July 2, 2016 at 12:07 p.m., Wong

---

[1] The following facts are drawn from allegations contained in the FAC (Doc. 17) that the Court accepts as true for purposes of the instant motion. *See Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 202 (2d Cir. 2014) (citations omitted).

returned the Vehicle, and examined it with a Sixt attendant for any damage. *Id.* ¶¶ 10-11. At that time, they determined that there was no new damage to the vehicle, and Wong was not charged for any damages. *Id.* ¶ 11. Later that day, Wong received an automated email from Sixt, which confirmed the Vehicle's return and attached a receipt indicating that the total due was $497.56. *Id.* ¶¶ 12-13.

On July 21, 2016, almost three weeks after Wong returned the Vehicle, Sixt sent him an email stating, *inter alia*: "After your drop off it has been noted/you have informed us that the vehicle you rented had sustained a new damage." *Id.* ¶ 14. The next day, Sixt emailed Wong a "Return Checksheet," purporting to show the damage the Vehicle incurred while it was in his possession. *Id.* ¶ 15. Specifically, it listed six existing scratches or dents and eleven new scratches or dents to the Vehicle. *See* FAC Ex. A ("Checksheet"). This Checksheet was dated July 2, 2016, but Wong alleges that he was not previously shown the Checksheet and that the date is "mistaken."[2] FAC ¶ 16.

Wong asserts that Sixt initiated at least two additional communications with him regarding the purported damage to the Vehicle in July 2016 and again in October 2016, seeking to collect money or obtain information to submit an insurance claim, but does not further allege the exact content of those communications. *Id.* ¶ 17. He claims that he refused to cooperate with Sixt on the grounds that he was not responsible for any damage to the Vehicle. *Id.* ¶ 18.

Thereafter, Wong received a letter from ACM dated March 28, 2017 regarding damage to the Vehicle ("March Letter"). *Id.* at ¶ 19. Wong avers that ACM is a "debt collector" as defined in Section 1692a(6) of the FDCPA, and that ACM presented itself as such to him. *Id.* ¶¶ 6, 21. In the March Letter, ACM stated that it had been retained by Sixt to handle the processing of a

---

[2] Wong does not state why he thinks the Checksheet is "mistaken."

claim concerning damage to the Vehicle. March Letter at 1. It further stated that according to its information, the Vehicle was in Wong's possession on the date of the loss. *Id.* ACM then asked Wong to pay the total amount due or to report the claim to his insurance company. *Id.* Specifically, ACM sought $3,352 for the car's repair, and $150 as an administrative fee. *Id.* Attached to the March Letter was an estimate from a repair shop which listed 32 line items of repair that needed to be performed on the Vehicle. *Id.* at 2-4. Notably, this estimate was dated March 10, 2017—eight months after Wong had returned the Vehicle to Sixt. *Id.* at 2. The March Letter also included the following language:

> Pursuant to 15 USC Section 1692g, be advised that Alternative Claims Management is attempting to collect a debt and any information obtained will be used for that purpose. Within thirty (30) days after receipt of this notice you must dispute the validity of this debt, or any portion thereof, or this debt will be assumed to be valid by the debt collector. Upon your written request within thirty (30) days after receipt of this notice, we will furnish you with the name and address of the original creditor, if different from the "Creditor/ACM Client" listed above. If you notify us, in writing, within thirty (30) days after receipt of this notice that the above debt, or any portion thereof, is disputed, we will obtain verification of the debt and a copy of such verification will be mailed to you.

*Id.* at 1.

Wong does not allege that he disputed the debt to ACM within thirty days after he received the March Letter. Instead, he disputes for the first time in the instant action that he is responsible for the damage and notes that even Sixt's Checksheet conflicts with the March Letter. *Id.* ¶ 22. For example, amongst the thousands of dollars of damages ACM sought were hundreds of dollars for labor to repair the rear bumper, but the Checksheet expressly noted that no damage occurred to the rear bumper during Wong's rental. *Id.*

B.   **Procedural Background**

On April 28, 2017, Plaintiff filed the Complaint against ACM and Sixt, alleging that ACM violated the FDCPA and that both ACM and Sixt violated the Florida Deceptive and Unfair

3

Trade Practices Act.[3] Doc. 1. On July 20, 2017, Plaintiff voluntarily dismissed Sixt from the instant action with prejudice. Doc. 15. On July 31, 2017, Plaintiff filed the FAC, alleging that Defendant violated Sections 1692e(2)(A), 1692e(10) and 1692f of the FDCPA. Doc. 17. On August 28, 2017, Defendant filed the instant motion to dismiss. Doc. 18.

## II. LEGAL STANDARD

### A. Motion to Dismiss

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### B. FDCPA

The FDCPA is "primarily a consumer protection statute." *Avila v. Riexinger & Assocs.,*

---
[3] The standard form car rental agreement contained a choice of law provision identifying Florida law as applicable. Doc. 1 ¶ 13.

4

*LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008)). It was enacted in 1977 "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a violation of the FDCPA, a plaintiff must satisfy three elements: (i) the plaintiff must be a "consumer;" (ii) the defendant must be a "debt collector;" and (iii) the defendant must have committed some "act or omission in violation of FDCPA requirements." *See Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (quoting *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d 542, 548 (S.D.N.Y. 2010)).

Debt collectors are subject to strict liability for violations of the FDCPA. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (citing *Bentley v. Great Lakes Collection Bureau, Inc.,* 6 F.3d 60, 63 (2d Cir. 1993)). Moreover, to determine whether a communication violates the FDCPA, the Second Circuit applies the "least sophisticated consumer" standard. *See id.* In applying this standard, courts "ask how the least sophisticated consumer . . . would understand the collection notice" at issue. *Avila*, 817 F.3d at 75 (citation omitted). Under this test, a violation of the FDCPA is established if the conduct at issue "could mislead a putative-debtor as to the nature and legal status of the underlying debt, or [ ] could impede a consumer's ability to respond to or dispute collection." *Gabriele v. Am. Home Mortg. Servicing, Inc.,* 503 F. App'x 89, 94 (2d Cir. 2012).

## III. DISCUSSION

Wong alleges that he is a consumer, that ACM is a debt collector, and that ACM violated Sections 1692e(2)(A), 1692e(10) and 1692f of the FDCPA. ACM does not argue that Wong has

5

inadequately pled the first two elements. Accordingly, the only element at issue is whether Wong adequately alleged that ACM violated Sections 1692e(2)(A), 1692e(10) and 1692f to survive a motion to dismiss.

    A.    **Section 1692e**

Section 1692e(2)(A) prohibits debt collectors from making a "false representation of— the character, amount, or legal status of any debt," and Section 1692e(10) prohibits them from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A); 15 U.S.C. § 1692e(10). Wong alleges that ACM violated Sections 1692e(2)(A) and 1692e(10) when it asserted in the March Letter that he owed a debt—payment for damage to the Vehicle—that he does not in fact owe, and by misrepresenting the date on which the Vehicle was damaged. FAC ¶¶ 27-31. ACM argues that it did not make any misrepresentations because it accurately relayed what Sixt alleged was owed by Wong. Therefore, the Court must first determine whether liability under the FDCPA may attach to a debt collector that correctly conveyed to a debtor what the original creditor claimed was owed

As discussed above, the FDCPA is a strict liability statute that does not require plaintiffs to plead intent. *See Ellis,* 591 F.3d at 135. Thus, contrary to ACM's argument, a "debt collector's false statement is presumptively wrongful under the [FDCPA] . . . even if the speaker is ignorant of the truth." *Randolph v. IBMS, Inc.,* 368 F.3d 726, 728 (7th Cir. 2004). Indeed, in *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524 (S.D.N.Y. 2013), the court found that the debt collector violated Section 1692e even though the misrepresentation occurred because the original creditor provided the debt collector with incorrect information. In *Lee*, the tenant had fully paid his rent, but the landlord and the landlord's agent erroneously informed the debt collector that the

6

tenant had an outstanding balance. *Id.* at 526. The debt collector then sent a notice to the tenant, seeking to collect this amount. *Id.* at 526-27. The court found that the debt collector made a false representation concerning the tenant's debt in violation of Section 1692e by falsely stating that the tenant's account was delinquent. *Lee*, 958 F. Supp. 2d at 528-29. Likewise, here, Wong alleges that ACM sent him a notice requesting a payment that he did not, in fact, owe, thereby misrepresenting the character, amount and legal status of his debt. Therefore, Wong has adequately pled that ACM violated Section 1692e.[4]

ACM further argues that Wong cannot bring a lawsuit solely on the basis that the debt is invalid if the debt collector complied with the notice requirements in Section 1692g. Section 1692g requires debt collectors to notify customers of certain information including: a statement that unless the consumer disputes the validity of the debt within thirty days after receipt of the notice, the debt will be assumed to be valid; and a statement that if the consumer disputes the debt in writing within the thirty-day period, the debt collector will mail verification of the debt or a copy of a judgment against the consumer to the consumer. 15 U.S.C. § 1692g(a).[5] ACM

---

[4] As Wong asserts, after an FDCPA violation is found, a debt collector is entitled to assert the affirmative defense of bona fide error under Section 1692k(c), which can excuse it from liability. To be excused pursuant to this affirmative defense, a debt collector must prove by a "preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c); *see also Lee*, 958 F. Supp. 2d at 529. However, whether a debt collector is entitled to this defense is an issue of fact not appropriate for resolution on a motion to dismiss. *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 125 (2d Cir. 2011) (holding that it is premature on an appeal from a Rule 12(b)(6) motion to determine whether the misstatement at issue was due to a bona fide error because, under the FDCPA, the proper mechanism for taking account of such assertion is as an affirmative defense); *Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 16 Civ. 6609 (VSB), 2017 WL 4402567, at *5 (S.D.N.Y. Sept. 30, 2017). Accordingly, the Court cannot determine on a motion to dismiss whether ACM is excused from liability under Section 1692k(c).

[5] Section 1692g states the following:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

asserts that debt collectors do not have an independent obligation to validate the debt until the consumer disputes the debt under Section 1692g. Wong does not allege that ACM failed to adequately provide this notice via the March Letter, nor that he disputed the purported debt within thirty days of receiving the notice in accordance with Section 1692g prior to bringing this action. However, Wong argues that ACM's compliance with Section 1692g does not affect his ability to assert a claim under Section 1692e.

The parties have cited to no case in the Second Circuit or this district, and the Court is not aware of any, that addresses whether a debt collector's compliance with the notice requirements of Section 1692g, and a consumer's failure to challenge a debt in accordance with the procedures therein, affects the consumer's ability to bring a lawsuit for violation of the FDCPA. Other district courts in this Circuit have discussed this issue, however. Two courts in the Eastern District of New York have held that "[a]s long as a debt collector has included appropriate

---

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

. . .

(c) Admission of liability

The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

. . .

15 U.S.C. § 1692g.

8

language notifying an individual about the debt validation procedure under the FDCPA, the allegation that a debt is invalid cannot alone constitute the basis for an FDCPA claim." *Huebner v. Midland Credit Mgmt., Inc.*, No. 14 Civ. 6046 (BMC), 2016 WL 3172789, at *6 (E.D.N.Y. June 6, 2016) (citing *Bleich v. The Revenue Maximization Grp.,* 233 F.Supp.2d 496, 500 (E.D.N.Y. 2002)). Instead, those cases hold, "a consumer alleging that a debt referenced in a collection letter is not valid, is required to follow the clear and orderly procedure set forth in the FDCPA" for disputing the debt. *Bleich,* 233 F.Supp.2d at 501.[6] This proposition is not rooted in the text of the FDCPA, but rather, on the policy consideration that allowing such lawsuits would "discourage use of the detailed statutory procedure" instead of encouraging plaintiffs "to communicate directly with the debt collector to expeditiously resolve their claim." *Id.*

However, one District of Connecticut decision held that consumers need not strictly adhere to the procedures set forth in Section 1692g(b) prior to asserting an FDCPA claim. *Hudson v. Babilonia*, 192 F. Supp. 3d 274, 305 (D. Conn. 2016). In *Hudson*, the plaintiff alleged, *inter alia*, that the defendants violated Section 1692e(2)(a) by misrepresenting the underlying debt, which was a student loan for which plaintiff was listed as the co-signer but which he denied co-signing. *Id.* at 280-82, 303. One of the defendants argued that the plaintiff could not file suit against it because although the plaintiff previously disputed the debt, it failed

---

[6] Several other district courts have similarly held that consumers must first dispute the debt before bringing a lawsuit on the basis of the debt's alleged invalidity. *See e.g. Lorandeau v. Capital Collection Serv.,* No. 10–3807, 2011 WL 4018248, at *11-12 (E.D.Pa. Sept. 8, 2011) (holding that a plaintiff cannot bring a claim based upon a defendant's attempt to collect an invalid debt unless the plaintiff disputed the debt); *Wright v. N. Shore Agency, Inc.*, No. 07-1308 (RNBx), 2008 WL 11338704, at *2 (C.D. Cal. May 22, 2008) (dismissing the FDCPA action premised on the argument that the underlying debt is invalid because the plaintiff failed to dispute the validity of the debt prior to filing the action); *Daniel v. Asset Acceptance L.L.C.*, No. 06-15600, 2007 WL 3124640, at *5 (E.D. Mich. Oct. 23, 2007) (finding that the allegation that the debt is invalid cannot by itself be the basis of a lawsuit alleging fraudulent or deceptive practices because the plaintiff failed to follow the statutory debt validation procedure); *Carpenter v. RJM Acquisitions, LLC,* 787 F.Supp.2d 971, 974-75 (D.Minn. 2011) (holding that a "consumer cannot circumvent the [FDCPA's] procedural device to dispute the validity of a debt by filing an action pursuant to § 1692e on the sole basis that the debt is invalid.").

to do so in writing as required by Section 1692g(b). *Id.* at 304. The court rejected this argument. *Id.* at 304-05. It stated that the language of Section 1692g(b) does not deprive plaintiffs of their right to sue if they do not utilize the procedures set forth therein.[7] *Id.*

Furthermore, two Circuit courts have similarly held that consumers need not dispute their debt pursuant to Section 1692g prior to bringing a lawsuit.[8] The Third Circuit found that there is no such express requirement in the FDCPA, and that "in fact, the statutory language suggests the opposite. The language of § 1692g indicates that disputing a debt is *optional*." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 247 (3d Cir. 2014) (emphasis added). The statute only lists "consequences '*[i]f* the consumer' disputes a debt . . . and it makes clear that failure to dispute a debt cannot be construed as an admission of liability." *Id.* (citing 15 U.S.C. § 1692g(b); 15 U.S.C. § 1692g(c)). Accordingly, the Third Circuit reasoned that "[t]he absence of a pre-suit validation request requirement does not appear accidental given the protection Congress bestowed on those who opt not to seek validation of the debt." *Id.*

Likewise, the Fourth Circuit noted that the FDCPA is a "comprehensive and reticulated

---

[7] The Court notes that at least one out-of-Circuit district court has held that while consumers do not need to dispute the debt in *writing*, they must still contest the debt prior to bringing an FDCPA claim solely based on the alleged invalidity of the debt. *See e.g. Palmer v. I.C. Sys., Inc.*, No. C-04-03237 (RMW), 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005). The District of Connecticut in *Hudson* does not squarely address whether consumers do not need to contest the debt at all, or whether consumers are merely excused from following the exact procedural mechanisms of disputing the debt under Section 1692g. *Hudson*, 192 F. Supp. 3d at 305. Indeed, *Hudson* does not specifically reject the holding in *Bleich*. *Id.* (noting that *Bleich* does not support the defendant's position without further explanation).

[8] Several district courts have held similarly. *See e.g. Thompson v. Gen. Revenue Corp.*, No. 2:16 Civ. 734, 2017 WL 3276018, at *3-4 (S.D. Ohio Aug. 2, 2017) ("Plaintiff did not waive her claim that the debt is not owed when she did not elect to use the FDCPA's verification procedure."); *Muller v. Midland Funding, LLC*, No. 14 Civ. 81117 (KAM), 2015 WL 2412361, at *12–13 (S.D. Fla. May 20, 2015) ("Plaintiff was not required to challenge the validity of the purported debt before suing under § 1692e"); *Eide v. Colltech, Inc.*, 987 F. Supp. 2d 951, 961-63 (D. Minn. 2013) (holding that "disputing the validity of a debt using the procedures outlined in § 1692g is not a prerequisite to filing an FDCPA claim"); *Brown v. Palisades Collection, LLC*, No. 11 Civ. 00445 (JMS), 2011 WL 2532909, at *3 (S.D. Ind. June 24, 2011) ("[N]o provision of the FDCPA explicitly requires debtors to use the informal debt verification procedure—unlike debt collectors who are explicitly forbidden from making false statements about debts in the first instance, 15 U.S.C. § 1692e(2)(A). . . . A consumer's failure[] to dispute the debt in no way absolves debt collectors from failing to properly state the debt.").

10

statutory scheme, involving clear definitions, precise requirements, and particularized remedies." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 392 (4th Cir. 2014) (quoting *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 233 (4th Cir. 2007)). In that comprehensive statutory scheme, the Fourth Circuit also found that an explicit pre-suit validation requirement was tellingly absent. *Id.* It thus held that plaintiffs could bring lawsuits without having disputed the debt pursuant to Section 1692g beforehand because "had Congress intended for a debt collector's liability under the FDCPA to hinge upon a debtor's compliance with the validation provisions found in § 1692g . . . it would have so indicated." *Id.* Moreover, the Fourth Circuit stated that the remedial purpose of the FDCPA counsels against holding that a consumer forfeits the ability to bring an FDCPA claim for failure to invoke Section 1692g's "discretionary validation procedures." *Id.* at 393. In fact, allowing debtors to raise Section 1692e claims without first contesting the underlying debt "promotes the remedial nature of the FDCPA because it preserves debtors' abilities to obtain a remedy for violations of the statute." *Id.* It would also further the statute's purpose of preventing abusive, deceptive, and unfair debt collection practices instead of shielding debt collectors from liability for their falsehoods. *Id.* at 393-94.

The Court finds persuasive the reasoning in *McLaughlin*, *Russell*, and those district courts which do not require pre-suit validation requests prior to bringing an FDCPA lawsuit. There is nothing in the text of the FDCPA that prohibits customers from bringing lawsuits before disputing the debt under Section 1692g. The statute only lists consequences of what occurs if the debt is disputed, 15 U.S.C. § 1692g(b), and expressly notes that failure to dispute the validity of the debt "may not be construed by any court as an admission of liability by the consumer," 15 U.S.C. § 1692g(c). *See McLaughlin,* 756 F.3d at 247; *see also Russell,* 763 F.3d at 393. While a customer's failure to dispute the debt within thirty days under Section 1692g allows debt

11

collectors to proceed in its collection efforts, the statute does not state that such failure will prevent a customer from bringing a lawsuit on the basis that the initial communication contained a misrepresentation. In the absence of such express language, the Court declines to dismiss the FAC on the basis that Wong did not challenge the validity of the debt within thirty days of receiving the March Letter. Accordingly, Wong may proceed on his Section 1692e claims.

> B.    **Section 1692f**

Section 1692f of the FDCPA prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt" and lists eight non-exhaustive examples. 15 U.S.C. § 1692f; *see Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 127-28 (2d Cir. 2016) ("noting that 'unconscionable,' in this context, means '[s]hockingly unjust or unfair,' or 'affronting the sense of justice, decency, or reasonableness . . . .'") (citation omitted). However, "conduct that may be deemed 'unfair or unconscionable' is not limited to the acts enumerated in subsections (1) through (8)." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). Nonetheless, violations of Section 1692f are generally defined by either "(1) the unauthorized taking of money or property . . . , or (2) communicating with a consumer in a manner that will cause their *public* embarrassment or invasion of privacy." *Feldheim v. Fin. Recovery Servs., Inc.*, No. 16 Civ. 3873 (KMK), 2017 WL 2821550, *4 (S.D.N.Y. June 28, 2017) (emphasis in original) (citing *Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 315 (E.D.N.Y. 2015)).

Section 1692f is distinguishable from Section 1692e in that "Section 1692e mainly targets practices that take advantage of a debtor's naivete or lack of legal acumen" whereas Section 1692f "is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, No. 16-

2165-CV, 2017 WL 5330081, *4 (2d Cir. Nov. 14, 2017). Moreover, Section 1692f is intended to be a catchall provision that provides a cause of action for unfair practices that are not specifically addressed by Sections 1692d and 1692e. *Okyere*, 961 F. Supp. 2d at 530 (S.D.N.Y. 2013); *see also Rogers v. Capital One Servs., LLC*, 447 F. App'x 246, 249 (2d Cir. 2011) (noting that Section 1692f is "a catchall provision prohibiting the use of any 'unfair or unconscionable means to collect or attempt to collect any debt.'"). A single act could be unfair without being deceptive, deceptive without being unfair, or both deceptive and unfair. *Arias*, 2017 WL 5330081 at *4. If an act is both deceptive and unfair, a debt collector may have violated both Sections 1692e and 1692f. *Id.* (noting that a debt collector who sends a debtor a postcard containing a misrepresentation can violate both Section 1692f(7) and Section 1692e).

Wong alleges that ACM acted unconscionably in violation of Section 1692f by (1) attempting to collect damages that were first recorded after he returned the vehicle when he was not present, and (2) seeking to collect a payment for damages that could have been pre-existing, non-existent, or occurred after Wong returned the car. FAC ¶¶ 36-37. ACM asserts that Wong has only challenged the validity of the debt and failed to allege how ACM's conduct was also unfair or unconscionable in violation of Section 1692f.

Wong argues that attempting to collect amounts in excess of what is actually due or administrative fees violate Section 1692f. However, the cases he cites to for this proposition are inapposite as they concern allegations that the payment sought were not legally authorized, and thus, are unfair or unconscionable under Section 1692f as a result. *See Madden v. Midland Funding, LLC*, 786 F.3d 246, 254 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 2505, 195 L. Ed. 2d 839 (2016) (remanding to the district court to determine whether New York law applies, in which case the defendant would have violated Section 1692f(1) by attempting to collect interest at a

13

rate higher than permitted); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 163 F. Supp. 3d 109, 115 (S.D.N.Y. 2016) (holding that the defendant violated Section 1692f(1) because it attempted to collect attorneys' fees without any legal basis); *Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264, 276 (S.D.N.Y. 2001) (finding that the collection fee violated Section 1692f(1) because it was unauthorized under 34 C.F.R. § 682.401(b)(27)(i)); *Campbell v. MBI Associates*, 98 F. Supp. 3d 568, 582-83 (E.D.N.Y. 2015) (holding that a five dollar processing fee violated Section 1692f(1) because the fee is statutorily prohibited and contractually unauthorized). Wong makes no such argument here.

Indeed, Wong only argues that the March Letter was improper because the underlying debt is invalid. The basis for his Section 1692f claim is that he does not owe the repair costs because the Vehicle's damage did not occur during his rental and the damage was only recorded after he returned the Vehicle. Moreover, he argues that the administrative fee is invalid because "he did not damage the car." Doc. 21 at 9. The Court finds that while such allegations may show that the March Letter contained a falsehood, as discussed above, they fail to further demonstrate that ACM's collection practice was otherwise unfair or unconscionable. *See Ghulyani v. Stephens & Michaels Assocs., Inc.*, No. 15 Civ. 5191 (SAS), 2015 WL 6503849, at *4 (S.D.N.Y. Oct. 26, 2015) ("Where the allegations do not identify any misconduct beyond that which plaintiff asserts violates other provisions of the FDCPA, plaintiff has not stated a claim for relief under section 1692f."); *Sutton*, 121 F. Supp. 3d at 316 (finding that a collection letter did not violate § 1692f because the plaintiff did not allege that the defendant has attempted to take his money or property, or that it has caused him public embarrassment). Accordingly, Wong's 1692f claim is dismissed.

## IV. CONCLUSION

For the aforementioned reasons, the Defendant's motion to dismiss is GRANTED in part and DENIED in part. Specifically, Plaintiff's Section 1692e claims are allowed to proceed, but his Section 1692f claim is dismissed.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18.

It is SO ORDERED.

Dated: November 21, 2017
New York, New York

_____
Edgardo Ramos, U.S.D.J.